PATRICK DREW and JOHN DREW, Appellants, v. THE SCHOOL TOWNSHIP OF MADISON, H. O. JOSVANGER, ET AL., Members of the Board of Directors of said School Township, Appellees.

**Appeal:** Mandamus: REVIEW: MATTERS NOT RAISED IN LOWER COURT.
1 Proceedings in the Supreme Court for a restraining order, in aid of its jurisdiction on a pending appeal from a judgment in mandamus, can not be treated as an original proceeding to secure an injunction, as the same should have been instituted in the district court; and the appellate court will not consider any matter appearing therein in reviewing the trial court's action in denying the writ of mandamus.

Mandamus: DISCRETION: SCHOOLS: PROCEEDING TO COMPEL ERECTION OF
2 SCHOOL HOUSES. The writ of mandamus is not a matter of absolute right but rests largely in the discretion of the court, and before it will issue it must appear that the defendants are failing or refusing to perform some duty resulting from an office, trust or station, in which case the court may by mandamus compel the parties to act but can not control their actions. In this case it was sought to compel a school board to select sites and erect schoolhouses pursuant to a vote of the directors. They had not absolutely refused to act but were proceeding cautiously in an attempt to carry out their instructions, and were deferring

action until a definite conclusion as to the subdivision of the district could be reached; and it is held that the delay, occasioned largely by the act of the complainants, was not unreasonable.

**Schools:** DIVERSION OF FUNDS: INJUNCTION. School officers can not
3 divert funds to some other purpose than that for which they were voted by the electors, and an injunction will lie to restrain such a threatened diversion of funds.

*Appeal from Winneshiek District Court.*—HON. L. E.
FELLOWS, Judge.

SATURDAY, APRIL 9, 1909.

ACTION of *mandamus* to compel the defendants as members of the board of directors of a school township to select sites and build schoolhouses pursuant to a vote of the electors of said school township. Defendants interposed various defenses, some of which will be noticed in the body of the opinion. The case on the issues joined was tried to the court, resulting in a judgment dismissing the petition, and plaintiffs appeal.—*Affirmed.*

*E. W. Cutting,* for appellants.

*C. N. Houck* and *N. Willett,* for appellees.

DEEMER, C. J.—The record is somewhat obscure and some claims are made, based upon a showing made to this court after the case was decided in the lower court, for the purpose of securing a restraining order against the defendants. It goes without saying that, as this is not a court of original jurisdiction, we can not on this appeal consider any matter which was not submitted to the trial court.

The primary controversy in the case seems to be over the location of certain sub-school districts, although the real issue is over the expenditure or proposed expenditure

of certain money collected pursuant to a vote of the electors of the school township. There is little dispute in the facts, but the parties draw different conclusions therefrom, and the case must be decided largely upon these inferences.

Prior to May, 1907, the school district of Madison contained five subdistricts, each having a schoolhouse, three of which were at that time old, dilapidated, and out of repair. Many of the patrons of the schools were dissatisfied with the physical condition of these buildings, and there had also been much agitation regarding the redistricting of the township, and on May 6, 1907, there was submitted to the electors of the township the following proposition: "Shall the board of directors of the school township of Madison, county of Winneshiek, state of Iowa, be authorized to levy a tax of $3,000 to build three more schoolhouses in the township?" The proposition was carried, and pursuant thereto a tax was certified, levied, and collected. Between the time of the voting the tax and January of the year 1908 there was much discussion among the electors regarding the building of the schoolhouses and the redistricting of the township, and, in order to test the sentiment of the township, the board of directors subdivided the township into eight subdistricts, making this subdivision subject to ratification by the voters at the annual meeting on the second Monday in March of the year 1908. Immediately after the making of the subdivision by the board, plaintiffs herein took an appeal to the county superintendent from so much of the action as provided for the submission of the matter to the electors. Upon this appeal the condition or proviso was held invalid, and the subdivision of the district was made absolute; the county superintendent holding that the electors had nothing to do with the creation of subdistricts. After this decision by the county superintendent, the board again met and passed a resolution to the effect that the question of raising $2,500 additional to build three more schoolhouses necessitated

by the establishment of the eight subdistricts be submitted
to the vote of the electors. At the annual meeting of
the electors held on March 9, 1908, this proposition was
submitted to the electors; and it was defeated by a large
majority. At this same meeting, and after the proposition
had been defeated, a motion instructing the board to defer
building any schoolhouses for one year or less at the op-
tion of the board to allow the people to come to a more
satisfactory understanding of the new redistricting was
carried. On April 3, 1908, the board held another meet-
ing for the purpose of trying to locate the extra schoolhouses
occasioned by the adoption of the eighth subdistrict system.
At this meeting the county superintendent was present,
and the matter of location was fully discussed, and, as a
result, a tentative plan was adopted which conditionally
located the eight schoolhouses. This left but two of the
old buildings standing; one of these being in the district
where plaintiff John Drew lived. This plan also involved
the removal of three of the old buildings. A resolution
was also passed for the submission of the question of
voting on additional tax of $2,500 to the electors at a
special election with which to build, repair, and move such
of the school buildings as were contemplated by this new
plan. This special election was to be called for May 2,
1908. Plaintiffs were each present at this meeting and
participated in the deliberations thereof. This resolution
was thereupon submitted to the electors, and it was de-
feated by a large majority.

Plaintiffs commenced this action of *mandamus* October
26, 1908, but it did not go to trial until some time in the
year 1909, and was not decided until May 28, 1909.
As will be noticed, this action was commenced very shortly
after the electors had instructed the board to defer build-
ing any schoolhouses for the period of one year, or, at the
option of the board, for a less period, to allow the people
to come to a more satisfactory understanding regarding

the redistricting. After the action was commenced, the board of directors held a special meeting, and three of the members were appointed a committee to inquire into the cost of new schoolhouses to report at an adjourned meeting. This adjourned meeting was held in January, 1909, and the committee reported, recommending concrete for the foundations and lumber for the superstructure of the new buildings, and this report was adopted by the board. A committee was thereupon appointed by the board to confer with the county superintendent as to places for the new school buildings, and the meeting was adjourned until February 20, 1909. On this latter date the board met and the committee made a report, recommending the adoption of certain sites for the new buildings, but nothing further. The report of this committee was rejected and disapproved. The regular annual meeting of the electors was held March 8, 1909, and the question of consolidating the township into four subdistricts was submitted to the electors and carried by a vote of forty-six to thirty-seven. Again, the board met in special session on March 25, 1909, and endeavored to settle the question of locating the schoolhouses, but without results. This was the situation when the case was tried, and the only showing which we may consider on this appeal.

As already indicated, thereafter proceedings were had in this court to secure a restraining order, but these can not be considered on this appeal. That order was entered

1. APPEAL: mandamus: review: matters not raised in lower court.

in aid of our jurisdiction on appeal and the proceedings can not be treated as original to secure an injunction. Plaintiffs should have commenced and prosecuted the same in the district court. Plaintiffs rely somewhat upon the showing made in this court for the restraining order in support of their appeal in the main case; but we have no authority to consider any matter appearing therein in reviewing the action of the trial court in denying the writ of *mandamus*.

Plaintiffs concede that they have no right in a *mandamus* proceeding to control the action of the board in the selection of the schoolhouse sites.   But they do insist, and this to our minds is the only point in the case, that defendants, instead of using the $3,000 for the purpose of erecting three more schoolhouses in the township, were at the time when this action was commenced about to use the $3,000 voted for this specific purpose in the repair or rebuilding of old schoolhouses which were in existence when the vote was taken.   There can be no doubt under the record that the vote was for the erection of three more new schoolhouses, and not for the repair or rebuilding of old ones.   We find of record in the proceedings of the annual meeting held March 11, 1907, the following: "Moved and seconded that an informal vote be taken on a proposition to build three more schoolhouses. Motion declared carried by president.   Moved and seconded that an informal vote be taken to replace schoolhouses in district numbers 1, 2 and 3, with new ones, or such ones as in the judgment of the board are deemed necessary. Motion declared lost."   The question submitted to the electors was: "Shall the board of directors of the school township of Madison, county of Winneshiek, state of Iowa, be authorized to levy a tax of $3,000 to build three more schoolhouses in the township?"   Again the electors refused to ratify the proposition to vote $2,500 additional for the purpose of repairing, removing, or rebuilding the old schoolhouses.   It must be remembered that this action was commenced in October, 1908, and that the judgment of the trial court was entered May 28, 1909.   That judgment was as follows:   "It is adjudged that there has been no refusal on the part of the board of directors of the defendant district to perform their duty in building schoolhouses in accordance with the vote of the district, and, under the circumstances, no delay through the fault of the

2. MANDAMUS: discretion: schools: proceeding to compel erection of school houses.

board. The evidence satisfied the court that the board is in good faith seeking to subserve the best interests of the district. The fund voted should be used in the building of the schoolhouses, and the board is clothed with no authority to divert the fund to other purposes. Peculiar difficulties are to be overcome which require time to adjust, so as to secure the most satisfactory results. The board has a wide discretion, which this court ought not by a peremptory order seek to control. The writ of *mandamus* asked for is denied. Judgment for defendants for costs. To all of which plaintiffs except."

When the action was commenced, the board had been instructed by the electors to defer the building of any schoolhouses for one year from March 9, 1908, and prior to the time of the decision the board had appointed committees to estimate the cost and prepare plans for the new buildings. One of these committees, misunderstanding its duty, reported regarding sites for the schoolhouses, but this report was rejected, and nothing had been done after the vote deferring action toward building the schoolhouses until the electors met in annual meeting on March 8, 1909, when they voted to consolidate the township into four districts. Thus the matter stood when the case was decided by the district court.

The prayer of plaintiffs' petition was as follows: "Wherefore plaintiffs pray that a peremptory order of *mandamus* of this court issue, to be directed to said defendants, commanding them forthwith to select sites for and cause to be erected in the school township of Madison, in the county of Winneshiek, state of Iowa, three more new schoolhouses; and further, to provide for the establishment and maintenance of public schools therein as provided by law, and that plaintiffs have judgment against defendants for the costs of this proceeding, and for such other and further relief as may be equitable in the premises." The writ of *mandamus* is not a matter of

right, but rests very largely in the discretion of the court (*Vincent v. Ellis,* 116 Iowa, 609); and, before it will issue at all, it must appear that defendants are failing or refusing to perform some duty resulting from an office, trust, or station. Where any discretion is left, the court may compel the parties to act, but can not control such discretion. Code, section 4341.

In view of the record made in this case, which we are permitted to consider, it seems to us that the trial court did not abuse its discretion in denying the writ. The defendants were proceeding cautiously in an attempt to carry out the wishes of the electors, and by direction of the electors were deferring the building of the schoolhouses until something definite regarding the subdivision of the district could be agreed upon. The board was not refusing to act, and, as the trial court said, the board has not refused to act, but is endeavoring to perform its duty. The delay under the circumstances shown has not been unreasonable, and for much of it plaintiffs are now responsible.

Of course defendants can not divert the funds which were voted for a particular purpose to some other end. If they do, injunction will lie. But the case does not seem to be one for a writ of *mandamus.* It seems that plaintiffs have adopted this form of remedy in order to secure the building of a schoolhouse upon the land of John Drew, and at a place where it should not be located. For this reason alone, if for no other, the trial court was justified in denying the writ.

3. SCHOOLS: diversion of funds: injunction.

We do not determine whether or not plaintiffs are entitled to an injunction to prevent the expenditure of the money, and this opinion does not constitute an adjudication of that matter.

The judgment seems to be right, and it is *affirmed.*